IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Corwin J. Vangsness, et al., ) | |
| ) | |
| Plaintiff, ) | Case No. 12 C 50003 |
| ) | |
| vs. ) | |
| ) | |
| Deutsche Bank National Trust Company, ) | |
| as Trustee for Morgan Stanley Home ) | |
| Equity Loan Trust 2007-1, et al., ) | |
| ) | Judge Philip G. Reinhard |
| Defendants. ) | |

## ORDER

For the reasons stated below, defendants' motion [161] for summary judgment is granted. Judgment is entered in favor of defendants and against plaintiffs. This case is terminated.

## STATEMENT-OPINION

Plaintiffs, Corwin J. Vangsness and Carolyn Vangsness, bring this action against defendants, Deutsche Bank National Trust Co., as trustee for Morgan Stanley Home Equity Loan Trust 2007-1 ("Bank") and Saxon Mortgage Services, Inc. ("Saxon"). The third amended complaint alleges violations of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 et seq. ("ICFA"), for fraud and deception (Count I) and unfair conduct (Count II) and violation of the federal Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(e) (Count III). Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367. Defendants move [161] for summary judgment.

The local rules for this court require a party moving for summary judgment to file a "statement of material facts as to which the moving party contends there is no genuine issue and that entitles the moving party to a judgment as a matter of law." LR56.1(a)(3). The statement must be in short numbered paragraphs with citations to the record in each paragraph supporting the facts set forth in the paragraph. Id. The party opposing summary judgment must file a concise response to the movant's statement of facts which includes "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR56.1(b)(3)(B). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." Cracco v. Vitran Express, Inc., 559 F.3d 625, 632 (7th Cir. 2009).

1

Plaintiffs have not filed the response to each numbered paragraph in defendants' statement as required by LR56.1(b)(3)(B). A district court may "strictly enforce local rules regarding summary judgment by accepting the movant's version of facts as undisputed if the non-movant has failed to respond in the form required." Zuppardi v. Wal-Mart Stores, Inc., 770 F.3d 644, 648 (7th Cir. 2014). Accordingly, the court will treat the facts in defendants' statement as admitted.

On October 4, 2006, plaintiffs received a loan ("Loan"), entered a promissory note ("Note") evidencing the Loan, and entered a mortgage ("Mortgage") on their residence securing the Note. The Note was in the amount of $220,000 with an initial interest rate of 7.850%. Commencing on February 28, 2007, and during the events that are the subject of this litigation, Saxon was the servicer of the Loan. Bank was the beneficial owner of the Loan during the events that are the subject of this litigation. On their application for the Loan, plaintiffs represented that they had monthly gross income of $9,011.00.

At some point prior to October 31, 2008, plaintiffs failed to make their loan payments, but on that date entered into a loan modification agreement modifying their obligations under the Note and curing their default. Under the modification agreement, their interest rate was reduced to 6.00%, and their monthly payment was reduced to $1,335.33, from the original payment amount of $1,591.34.[1] The loan modification agreement provided that it represented "the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties."

On February 19, 2009, March 30, 2009, April 6, 2009, and July 28, 2009 Saxon informed plaintiffs they were in default on their loan and that Saxon may seek foreclosure. On September 10, 2009, Saxon informed plaintiffs it intended to accelerate the Loan due to the ongoing default. Plaintiffs have not paid anything on the mortgage since September 2009, with the exception of 5 payments in 2010. No payments have been made since then.

---

[1] The parties' statements of fact do not include figures for taxes and insurance payable by plaintiffs. In their brief (p.10-11, n.6), defendants cite to Carolyn's deposition testimony (p.178 of her deposition) that the real estate taxes were at the time of the deposition $7,000 annually ($583.33 per month) and that insurance was $1,800 annually ($150 per month.) She testified in prior years the taxes would have been somewhat lower. Saxon had paid the real estate taxes for 2009 through 2013. Based strictly on the statements of fact, the only evidence before the court of the amount of plaintiffs' monthly payment obligation is that it was the $1,335.33 set by the October 31, 2008 modification agreement. However, since defendants in their brief admit plaintiffs' monthly payment obligation, including the $1,335.33 under the modification agreement and amounts for taxes and insurance, is $2,068.66, the court will accept that figure as the total monthly payment figure for purposes of determining plaintiffs' HAMP eligibility.

2

On October 1, 2009, plaintiffs submitted a request to Saxon seeking a modification of the loan terms. Plaintiffs reported monthly net income of $6,394 in this modification request.[2] They also requested "a copy of the Note, HUD1, TIL, and all disclosures relating to closing this loan" and a "loan modification to avoid a lengthy legal process." These are the sum total of what plaintiffs contend are their Qualified Written Requests (QWR) under RESPA.

On October 22, 2009, plaintiffs filed a Chapter 7 bankruptcy petition. Plaintiffs filed Schedule I in the bankruptcy case in which they stated Corwin had monthly gross wages at that time of $7,154.00 with net monthly take home pay of $5,542.00. Plaintiffs filed a Statement of Intention in the bankruptcy case indicating they intended to reaffirm the mortgage debt with Bank but no reaffirmation agreement was ever entered. Plaintiffs received a discharge on January 29, 2010. Carolyn spoke with Saxon employees on numerous occasions in October and November 2009. As of November 23, 2009, plaintiffs had not received a written proposal for any modification from Saxon. Plaintiffs did not receive one or speak to anyone at Saxon between November 23, 2009 and January 11, 2010.

On January 11, 2010, Carolyn spoke with Saxon employee Linda Dawkins. Dawkins told her she needed to resubmit certain information to be considered for a possible loan modification. On January 31, 2010, plaintiffs faxed this information to Dawkins. Plaintiffs did not have any further conversations with anyone from Saxon until March 16, 2010 after a foreclosure action had been instituted against plaintiffs on March 8, 2010. During the March 16, 2010 call, Carolyn told Dawkins that Corwin's monthly income was $7600 and Carolyn's was $600 at that time. During this call, Dawkins advised Carolyn that plaintiffs did not qualify for the HAMP program.

On July 7, 2010, a judgment of foreclosure was entered against the Vangsnesses in state court. Carolyn was present and stepped up to the bench at the hearing. Counsel for the Bank did not say anything to Carolyn outside the presence of the court. Plaintiffs contend the Bank's attorney told Carolyn that day in open court that plaintiffs "had three more months to try to get some help." Corwin never had any conversations with Saxon. Plaintiffs agree that had no foreclosure ever been instituted they would not have been injured by Saxon's conduct.

The foreclosure action was dismissed without prejudice on August 24, 2011 and subsequently reinstated on December 21, 2011. On February 23, 2012, the state court ordered that the Bank not proceed to foreclosure sale until the Vangsnesses' motion to vacate the judgment had been heard. The state court noted in its order "that there is litigation between the parties in federal court and this matter is on hold pending resolution of that case." Nothing has happened in the state court case since then.

---

[2] In considering eligibility for a HAMP loan modification, the HAMP guidelines provide that if "only net income is available, the servicer must multiply the net income amount by 1.25 to estimate the monthly gross income." Home Affordable Mortgage Program Supplemental Directive 09-01 (April 6, 2009) p.6. [163-17, p.7] Multiplying $6,394 by 1.25 yields an estimated gross monthly income of $7,992.50.

3

Plaintiffs' statement of facts recites a series of conversations Carolyn had with Saxon employees over an extended period of time. In a conversation with an employee named Jeremy in October 2009, plaintiffs say Jeremy told Carolyn that plaintiffs qualified for a HAMP loan modification. He never said they were approved but said that they would be on the HAMP program by January or February 2010. Jeremy told her not to make any payments to Saxon while they were going through the modification review process. On November 23, 2009, Jeremy called and left Carolyn a message that everything was on track and she should call back in mid-January. On January 11, 2010, Carolyn called Jeremy's number but it was answered by Linda Dawkins. [This conversation is discussed above.] Carolyn's next conversation with Saxon was her March 16, 2010 call with Dawkins described above.

Carolyn made numerous calls to Saxon between March 16, 2010 and July 7, 2010, (the date of her court appearance on the foreclosure case noted above) attempting to reach Dawkins but Dawkins did not call her back.

A year later, Carolyn lodged a complaint with the United States Department of Treasury against Saxon. A three way telephone conference was held with a Treasury representative, a Saxon representative, and Carolyn. Subsequently, the state foreclosure action was dismissed without prejudice on August 24, 2011 as noted above. Plaintiff received a HAMP mortgage loan modification application from Saxon on July 5, 2011. The deadline for submitting the package was July 8, 2011. Plaintiff called the person who sent the package, Trenda Cooper, to seek more time but never spoke with her and did not receive any calls from her until July 14, 2011 when Cooper left a message saying Saxon was closing the loan modification file and the matter was concluded.

The elements of a claim under ICFA are 1) a deceptive or unfair act or practice by the defendant; 2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; 3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce; and 4) the defendant's conduct is the proximate cause of plaintiff's injury. Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 574 (7th Cir. 2012).

Plaintiffs contend the injuries they sustained are the wrongful foreclosure action brought against them and the emotional anguish the foreclosure process has inflicted on them. However, the foreclosure action was not wrongful. Plaintiffs obtained a bankruptcy discharge on January 29, 2010. Since no reaffirmation agreement was entered as to plaintiffs' mortgage debt to Bank, Bank was entitled, after plaintiffs' discharge, to foreclose the mortgaged property and ultimately have it sold at judicial sale to satisfy plaintiffs' indebtedness to Bank. The bankruptcy discharge injunction bars attempting to collect a discharged debt as a personal obligation of the debtors, 11 U.S.C. § 524(a)(2), but the "creditor's right to foreclose on the mortgage survives or passes through the bankruptcy." Johnson v. Home State Bank, 501 U.S. 78, 82 (1991). Bank taking action it was lawfully entitled to take does not create an actionable injury on the part of plaintiffs. The foreclosure was neither deceptive nor unfair and plaintiffs' have no ICFA claim arising from it.

Plaintiffs argue that the conversations Carolyn had with various Saxon employees evidence deceptive or unfair acts on the part of defendants. Those conversations have Saxon employees telling Carolyn not to make payments during the modification process and telling her the plaintiffs qualified for the HAMP program and telling her she needed to resend them documents for the loan modification process when they already had those documents. However, it is clear plaintiff did not qualify for a loan modification under the HAMP program.

To qualify for a HAMP modification the borrowers' monthly payment (including taxes and insurance) must be greater than 31% of their gross monthly income. Home Affordable Mortgage Program Supplemental Directive 09-01 (April 6, 2009) p.6. [163-17, p.7] Plaintiffs' monthly payment was $2,068.66 which is 31% of $6,673.10. When plaintiffs' sought a modification on October 1, 2009, they reported <u>net</u> monthly income of $6,394 which yields an estimated gross monthly income of $7,992.50 under Supplemental Directive 09-01. (See footnote 2 above). When plaintiffs filed their bankruptcy schedules in October 2009, Corwin had monthly gross wages of $7,154.00. When Carolyn spoke with Dawkins on March 16, 2010, Carolyn told Dawkins that Corwin's monthly income was $7600 and Carolyn's was $600. Because plaintiffs' monthly payment was already less than 31% of plaintiffs' gross monthly income, plaintiff was not qualified for a HAMP modification and, in fact, Dawkins advised Carolyn that plaintiffs did not qualify for the HAMP program during their phone conversation of March 16, 2010. Because a HAMP modification was unavailable to plaintiffs, a HAMP modification could not have been a basis for stopping the foreclosure action.

Because Bank was entitled to foreclose on plaintiffs' property once the bankruptcy discharge was entered and because no HAMP modification was available to plaintiffs to stop the foreclosure (since they did not qualify for HAMP), nothing any of Saxon's employees told plaintiffs – whether inaccurate, misleading, deceptive or not – could have caused plaintiffs any damage. The right to foreclose was fixed. Any delay caused by unreturned phone calls, employee turnover at Saxon, lost documents and misstatements about HAMP eligibility worked in plaintiffs' favor. Plaintiffs have been able to live in the mortgaged property without making payments and with Saxon paying the real estate taxes for over five years. The mortgage debt has been discharged in bankruptcy so Bank cannot take action to collect the unmade payments from plaintiffs.

As to plaintiffs' assertion that Bank's counsel told Carolyn in open court when the judgment of foreclosure was entered that plaintiffs "had three more months to try to get some help," there is nothing inaccurate about that statement. Under Illinois law, the redemption period does not end until 7 months after all of the mortgagors have been served with summons or 3 months after the date of entry of the judgment of foreclosure. 735 ILCS 5/15-1603(b). The judgment of foreclosure was entered July 7, 2010 and plaintiffs had the longer of three months from that date (October 7, 2010) or 7 months from when plaintiffs were served with the summons in the case. Plaintiffs were served after the filing of the foreclosure complaint on March 8, 2010 and before Carolyn's conversation with Dawkins on March 16, 2010. Seven

5

months from service would therefore be between October 9 and October 16, 2010, approximately 3 months from July 7, 2010 the date of counsel's statement in court.

Plaintiffs also claim defendants violated RESPA by failing to respond as required to plaintiffs' QWR.  RESPA requires a loan servicer to take certain actions in response to "a qualified written request from a borrower (or an agent of the borrower) for information relating to the servicing" of a loan. 12 U.S.C. § 2605(e)(1)(A).  "Servicing" is defined in the statute to mean "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

In conjunction with a loan modification request on October 1, 2009, plaintiffs requested "a copy of the Note, HUD1, TIL, and all disclosures relating to closing this loan."  "This loan" refers to plaintiffs' original loan of October 4, 2006.  Requests for information relating to loan origination rather than loan servicing are not QWRs. Todd v. Shorebank, No. 12 CV 6575, 2013 WL 3709066, * 5 (N.D. Ill. July 19, 2013) (Zagel, J.)  Such requests are not a "true borrower inquiry about an account error related to loan servicing." Id.  Saxon was not required to respond to plaintiffs' request for information because the request was not a QWR under RESPA.

For the foregoing reasons, defendants' motion [161] for summary judgment is granted.  Judgment is entered in favor of defendants and against plaintiffs.  This case is terminated.

Date: 9/25/2015          ENTER:

*Philip G. Reinhard*

United States District Court Judge

Electronic Notices. (LC)